WILLIE OUTLAW, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed June 29, 1921.

1.  The mere fact that defendant was riding in a car alone with the wife of another does not make the defendant the aggressor in bringing on a difficulty with the husband unless he committed some act or attempted act of violence toward the husband or the wife.

2.  The mere walking or driving of a married woman with another man, or a married man with another woman, is not sufficient provocation to justify an assault by either spouse.

3.  Where the evidence so greatly preponderates against a verdict that it may well be assumed that the jury were influenced by considerations outside the evidence, the verdict will be set aside and a new trial granted.

A Writ of Error to the Circuit Court for Walton County; A. G. Campbell, Judge.

Judgment reversed.

*Walter Kehoe* and *Forsyth Caro,* for Plaintiff in Error;

*Rivers H. Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

BROWNE, C. J.—William Outlaw was convicted of assault with intent to commit murder in the second degree.

The evidence discloses that Mrs. Ingram, the wife of the man assaulted sent two telegrams to Outlaw, one on the 3rd and one on the 4th. The first read: ''Come today if you cannot wire me care Jennie Skipper.'' The second read: ''Come today by one or two.'' Both were signed ''Addie.'' In the after noon of the 4th Mrs. Ingram walked out on what is known as the Glendale road, where she met Mr. Outlaw, who was traveling in a car. She got in the car with him and they rode together some distance and turned and came back towards DeFuniak Springs, when they reached the second bridge they saw another car containing the driver and Mrs. Ingram's husband. Outlaw stopped to let the other car pass, and when he did Ingram jumped from his car and with his right hand in his bosom, ran or walked rapidly to the car in which Outlaw and Mrs. Ingram were, and said: ''Well you are going to ruin me are you, you have tried to. Crawl out and I am going to whip you.'' Ingram further testified: ''After I got the curtain up I reached in under the curtain, it was not fastened and I reached in through there and started to pull him out,—tried to make him get out and I couldn't. He didn't offer any resistance and I wondered why he didn't raise his hands up. I looked down and one hand was on the gun. He put the gun out over the facing of the door and I starts back and he shoots me in the left hip.'' On cross-examination he testified: ''When I seen who it was I didn't like it the best in the world.'' ''I wasn't so power-

ful angry," but "I might have been" mad; as he got out of his car and went towards Outlaw, he used violent language towards Outlaw, saying "Well, God damn you, you want to ruin me, do you?" As to the assault he says: "I don't think I exactly hit him in the face." "I reached my hand from the under side of the curtain up and I got hold of him right along there (indicating) and told him to get out. I kind of jerked back my hand and I didn't exactly handle him like he was a doll—didn't put my hand up there like he was a china doll."

Mrs. Ingram says she did not know whether her husband hit or slapped Outlaw,—"he done something to him;" there was blood "on his sleeve and his nose" after he was struck. This is corroborated by several witnesses.

Outlaw's version of the affray is that when he stopped his car that Ingram with his right hand in his bosom rapidly approached him and said: "O, yes, God damn you, you are here, are you, I will get you." He came up to the car shoved his hand in, hit him on the nose with something and when he did he shot him once and made no attempt to shoot again, but got out of the car and assisted Mrs. Ingram to get her husband to the other car.

Just what version of the affray is correct is not material, because Ingram admits the assault, and the evidence is conclusive that he drew blood from the defendant's face. The testimony also discloses that threats to do bodily harm to Outlaw were made by Ingram and communicated to Outlaw prior to the difficulty. Ingram admits that he used violent language towards Outlaw as he went towards him, and that he had his hand in his shirt bosom, but denies that he had any weapon. Outlaw testifies to seeing a tire wrench. Clarence Aycock, the chauffeur who drove

Ingram to the scene of the difficulty, said Ingram took a Maxwell tire wrench that was in the car and stuck it in his bosom, and after he had done so said "I will kill the S. O. B. that is with her," and that when he got out of the car he had his hand in his bosom.

There was testimony about attentions that Outlaw had paid to Mrs. Ingram before she was married, and an attempt was made by the State to introduce a letter alleged to have been written by Outlaw to Mrs. Ingram. When this was excluded by the court, the State Attorney in the presence of the jury, stated "I want to make it plain before the jury that this man was not altogether justified in making love to another man's wife." There was further testimony not pertinent to the issue, from which the jury, if not fully instructed by the court, might have improperly found that Outlaw was the aggressor, and brought on the difficulty.

In order that the jury might not be misled on this point, the defendant requested this charge to be given, but it was refused by the court, and is the basis of the fourth assignment of error: "The fact that the defendant was riding in a car alone with the wife of Ingram, if the evidence proves that fact, would not alone make the defendant the aggressor in bringing on a difficulty, if there was a difficulty, unless there was some act of violence toward the said Ingram or his said wife."

This instruction was peculiarly applicable to the facts in the case, and should have been given. It was intended to offset the likelihood of the jury adopting a false rule in determining who was the aggressor, and when the court refused it he permited the jury to adopt a standard not known to the law, in determining whether Outlaw or Ingram was the aggressor. The testimony is so positive and

uncontradicted on the point of Ingram being the actual aggressor, that the verdict can only be explained by the conclusion that the jury considered Outlaw the aggressor because he was riding with Ingram's wife.

There may have been a time when a wife was regarded as her husband's chattel, and being out alone on a public road with another man regarded as sufficient provocation to justify the husband in making an assault upon her companion, but this is no longer true, when women enjoy equal freedom with men. The mere walking or driving of a married woman with another man, or a married man with another woman, is not sufficient provocation to justify an assault by either spouse, and the greater freedom of intercourse between men and women in this day protects them from unwarranted attacks by a jealous husband or wife, who sees in inocent acts of social intercourse ''confirmations strong as proofs of holy writ'' that they are flagrantly immoral.

The judgment is reversed, and a new trial granted.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.